In re. TBH19, LLC, David Shimano appearing for appellants, Linda Buie appearing for Appley Sam S. Leslie chapter trustee, and Christopher K.S. Wong appearing for Appley Gloria Kaufman. All right. Mr. Shimano, do you wish to reserve any time? I would, Your Honor, prefer to reserve three minutes if possible. All right. Thank you very much. You may commence. Good morning and may it please the Court. David Shimano on behalf of the appellants, the H.A.R. entities. I know the panel has reviewed the record, is fully familiar with it, so I'm not going to make any additional arguments. I'm just here to really answer your questions. I do want to just make two brief points before we get to your questions. One is, I know these 99, these 99 teen cases are, always come up in different situations and they're fact-specific in many ways, but I want to make sure we're in that genre of when can you actually do that? What do you have to do to prove that you meet a standard to really cut off somebody else's right to exercise a right under the bankruptcy code? Another point I want to emphasize is in preparing for oral argument, I reviewed the spark factor design decision which came out after we filed our opening brief and I just want to say that that case to me kind of highlights the error that happened in this case. I mean that case, the spark design, the spark factor design case, again, different in many ways, but still that's like the minimal standard of what a trustee has to do and what a court has to do to approve a 90-19 settlement over a creditor's objection, where a significant creditor is saying please don't do this. What has to happen to the record for that to occur? And there, again, you had full disclosure of all of the, all the issues and all the causes of action. You had analysis of them, you had the trustee going into detail about the chance of success and the expense, and you had the court incorporating that into finding written findings of fact and going into detail about it. You have none of that. So if we vacate and remand and say make better findings, and that's all we say, what does that get you? Well, I think what it gets us is we go back to the bankruptcy court and two issues have to get dealt with by the bankruptcy court. Well, I just said if we vacate and remand and say we're not telling you you have to do anything, judge. He just doesn't think your findings are complete enough. Make new findings. He doesn't even have to give you a hearing, does he? If you, if you vacate and say just give us more findings, yeah. I mean, the judge will follow your mandate. Well, my point is I think you're, you're, you're, I stopped you because I'm sitting here thinking I'm not sure it works the way you think it works, because if we were to simply vacate and remand and on the basis that what you were just arguing is you have to do this very complete analysis, saying your analysis isn't good enough, he can give you another hearing. Yeah. Does he have to? I think, again, what I think the, and what the error here is, maybe I'm, the answer is no, he doesn't have to, he can do whatever he wants. Thank you. But, but that's, but the error here is more that he was not presented by the trustee with the minimal facts that he had to consider under the A&C standard, all right? But break that out, though, because there's several factors here, but really what this is is a claim objection. Correct. And, and so what, when you say he wasn't presented with the minimal, what more detail are you, because you also make, well, we, the state didn't get much. There's not always there, a lot there to get, especially the claim objection. There were, there were claims that were being settled, but the trustee was pretty clear that brought by the debtor really didn't amount to much. We're not here objecting to the dismissal of the affirmative claims. Okay. And again, this is something that, again, it's because the, because the motion is so vague, the affirmative claims brought in state court by the debtor, a principal named Leonard Ross, an extremely litigious person who would assert a claim against anybody for anything. We didn't put any stock in the affirmative claims, all right? This, this was, okay, this is a, this was a contingent reimbursement claim, which had a, which was very unique in many ways. And our view was, and our measure of law, that claim cannot be allowed under 502E until they pay on the claim, which they've never done and likely never will in our lifetime. This is, they are going, maybe they will, okay, but if they do, that just gets them past 502E and gets us to the merits of whether they have a reimbursement, an allowed reimbursement claim against the estate, which we, as the competing claimant for the distribution from the limited pot, that's the issue, whether we have a right to challenge that. There's not a lot of money at stake here. I mean, there's, there's big dollars up in the ether, right? But, but when we get right down to it, how much remains in the estate approximately? Maybe that's a better question for, for trustees council, but what are we really talking about? That, that, that is a floating target. What we can say with certainty is there was a carve out of around 3.7 million dollars. There are competing claims to that. There's the Chapter 7 administrative expenses. There are Chapter 11 claimants. There are the unsecured creditors who are, my client, again, is, my client is 30 million dollars on, probably undisputed. There's a 10 million dollar claim that is disputed, and in our supplemental submission to you, we So, the trustee has represented in pleadings that he's going to at least ensure that there's a distribution of unsecured creditors of $700,000. But again, that's just a number today. The, the, what we're fighting about is depend, this is, this is a fight about ultimately hundreds of thousands of dollars. If we, we, if this is not reversed, and basically they get their 18 million dollar unsecured claim, that is, in our view, an improper allocation of hundreds of thousands of dollars that should be going to my client. And again, that is a small amount compared to the tens of millions of dollars of claims, but it's hundreds of thousands of dollars at the end of the day. Let me ask, go ahead. No. Another sort of question. You, you, you came in and said, well, we'll litigate the claim objection. Correct. Basically insulating the estate from the expense. And you answered one of my questions. You offered to litigate the affirmative claims. So the settlement of the affirmative claims, and whatever expenses go with that, if, if they're not dismissed, we, we put over here. Did you ever offer to make the estate whole if, as a result of your litigation, the estate couldn't recover the, the carve-out that was available, the $35,000, or it, to insulate the estate from any cost attendant to stay open while this litigation went forward? We, we never made a proposal like that in the very narrow opportunity we had to respond to the motion. That, we never did. Basically, we said, we said that we want to, we want to assert our rights. And to, we don't think that allowing us to assert our rights will delay the administration and closing of the case. Because what we said, and I, and in hindsight, I would have said it differently, but we said, look, the court has, has remedies under 502 to wrap up this claim if it wants. We now, I now realize, because again, it was never raised by them in their motion. They never, they never pointed out in their motion that 502e was at issue. The debtor had raised that. It was, that was in the pending objection that the trustee was never disclosed that 502e was at issue in the motion. So, the court never considered it. Creditors weren't, creditors weren't focused on it. And I should have, yes, I should have independently figured it out. Do you think that this very experienced judge just, it never crossed his mind that that was an issue? I mean, you know. Well, I, well, I, we can only speculate, right? Because he didn't really say much. I think what we can infer from the record was he was concerned about whether this case would, whether the state court litigation would, waiting for it would delay the administration of the bankruptcy case. Again, I think it's a legitimate issue. I'm just pointing out on appeal, 502e answers that question. That if they, they can appeal it all they want. They can litigate all they want in the state court, but if they never pay the indemnity claim, we get to close the case. And so, I don't think that is a cause for cutting off my client's rights to assert its independent right to object to the claim. So, I get. You really argue, I mean, I'm going to go back and look at your briefing, but I'm intrigued because I didn't really see your case as presenting as a truncation of your rights as opposed to simply the trustee got it wrong. Is that an argument you think you fully and fairly advanced before the bankruptcy court? I don't, I, we, we said two things. We said that this was, there, this was not on the merits, this was not a good settlement because this claim, which was a contingent disputed claim, we believe could never ripen into a valid allowed claim if litigated, right? So, we made that merit, that argument on the merits. Didn't she just have to pay it under your theory? No. If they, if they paid the They just lost in state court, right? They just lost in state court, but now there's going, but now it's going to get appealed, I assume. There's going to be a judgment against them for, in exception of my money. But, going to the merits, I don't want to really get into, I don't think the merits of the substantive objection is really at issue. I just want to understand, of course, the panel understand the context of this. Sure. They were paid to be a guarantor. They did not do that, right? They had the opportunity to pay on the guarantee when their liability was $52 million. They didn't do it. The state court judicial referee made its findings this month or two ago, saying their reasons for not doing it were baseless. They had no good cause, no lawful reason not to pay on the guarantee. Because of that, they would have cut off their exposure to $52 million in 2019. That meant that they would have been the senior lien holder. They would have had all the benefit of the sale of the property. By not doing that, they exposed themselves to an increase of, conceivably, on top of that $52 million, another $30 million of liability. The question is, by doing that, are they then allowed to come to the debtor and say, oh, you know, we did a baseless legal theory and it cost us $30 million. You have to indemnify us for that. I've looked at the whole lot. I've tried to find a case where somebody, that situation. We should be allowed to say, we get a trial or a hearing on whether or not they get to add $30 million to the claim pool by making a decision, not exercising lawful rights, but breaching their right, breaching their obligations. Well, I understand your $30 million, but for the settlement with the lender, but it's, you know, they settled for some fees and costs that don't seem to be really implicated in your theory, necessarily, all of them. And then $10 million. So how do we get to $30? They get to, their claim is $30 because the difference in the principle, the claim amount that they owe the senior lender, because they delayed for four million dollars, but the lender gets attorney's fees against them. And the lender, senior lender was represented by Sibley and Austin. I can represent to the court. It's a large bill. Yeah, no, I, I, So they're, they're, they're looking. But the estate isn't paying that, right? The state is not paying it. They're, for them to seek indemnity for paying. But isn't that the settlement? I mean, the settlement is the state's going to pay $10 million and not pay those attorney's fees, right? The settlement is they're going to have an $18 million unsecured claim against the estate. Some of which is, is the cost and expenses under the contract with you, $10 million of which is the indemnity claim, none of which is these additional fees and costs that, and I agree with you, it's going to be ginormous. Gigantic. But the, I mean, Your, your argument is that the gatekeeping function isn't, isn't being affected, right? They're going to get to bypass paying the $30 and get Correct. They're, they're, they are, they are going to get money that otherwise should go to my client without ever paying a dime to DBD. They're going to jump around 502E. I mean, They're getting $10 million that would never go to your client. Well, they could have a claim and they're not going to get $10 million. They're not getting anywhere near to me, but But they're going to get hundreds of thousands of dollars. I'm going to point out that we have gotten deep into your three minutes. So I think I want to answer your question. Yeah. Well, that's why we're deep into the three minutes. So I'm going to suggest you stop now and have some time for rebuttal. I will stop talking. All right. Thank you. Thank you. All right. So, Ms. Bui, are you starting and how are you dividing your time? I'm going to reserve five minutes for my co-counsel. All right. So the, again, the timekeeper function is yours. If she keeps talking, you might want to do something about it. Okay. You may commence. All right. Good morning, Your Honors. May it please the court. My name is Linda Bui. I'm with Shulman, Bashan, Freeman and Bui. We are counsel for Sam Leslie, the panel trustee. We are here today because appellant, who I will also refer to as the Haar Party's a Haar, have determined that the bankruptcy court must have abused its discretion because it overruled their objection. Never mind that the bankruptcy court has lived this very active case for three years and has exercised sound discretion in granting the 1919 motion. Never mind that the trustee has exercised his business judgment in entering into an agreement to settle a very comprehensive set of claims that would end expensive litigation. And that would stop. Well, it would end it for the estate. I'm sorry? It would end it for the estate, but it goes on appeal. I mean, you get the estate. I understand that. But really, this gets to be a fairly simple case, which is, you know, opposing counsel is arguing that you got to pay to play and you're using this improperly to get around that function, right? You're going to be able to collect on a guarantee, on indemnification that you haven't paid. Well, not she, they. Yes. I mean, that's it. But that is truly the harm and the error here that, as I understand it, the counsel's opposing, you know, or presenting to us. So why is it really, in my mind, why is it a trustee's concern? Because trustees hold money all the time. Yes, it is an obligation to liquidate expeditiously. But what's the cause there? I mean, why is it so important to close this case and let that process play out? Because the liability could be substantial. But it's going to be whatever it is, and it's a liability that has to be, you know, opposing counsel has to be paid before you have the co-aid right to collect. Not you, the other creditor, which you are seeking to truncate through the settlement. Right. But trustees settle these contingent, unliquidated claims all the time. And the state is. It's a contingent, and I'm sorry, but you're right. I'm not sure it's contingent. It's contingent in the fact from opposing counsel that it really only springs upon payment, and that hasn't happened. That's a different contingency of, you know, as to really the unliquidated nature of that, which is really what this is. So that is not necessarily the state's biggest concern. The claim is going to be whatever the claim is, and that's what they're saying. I understand you want to get that, but why is that so important in this case, to advance that on an estimation now so that you can pay it ahead of this resolution? Because the state needs finality. There's an ongoing state court litigation that the bankruptcy state is currently incurring fees. It will be, the state will receive a dismissal of that state court lawsuit as part of this agreement. Finality and a fixed amount. This is how Chapter 7 cases get administered. I'm fully aware of how Chapter 7 cases get administered. So, if it went through the full appellate process in state court, what would your estimate be? Because I'm in San Diego. I think most cases are going five years in the trial court now because of COVID, the backup's huge. I assume it's equally horrific. Yes. Yes, indeed, Your Honor. And we have no idea. And we have no idea how. These are litigious parties. They've been litigating for years prior to the bankruptcy filing and during the bankruptcy filing. And so I would not be surprised if they continue to litigate. So, the estate cannot be opened for some sort of final judgment. Or closed. Or closed. Closed. So, I'm trying, I think, so what we're trying to get our arms around here is what's the benefit to the estate? The benefit is the $35,000 that there's no argument about that. So, there's some small cash. And then the benefit is nobody seems to really believe the Haar Party's claims, or not, excuse me, not the Haar Party's, the, what's his name? Ross. Ross. Mr. Ross's claims are worth much. So, we got rid of that. And then it didn't stop anything in terms of the battle between the lender and her because that just got resolved while this is pending. So, so it's finality. And can you quantify it beyond those factors? Can I quantify it beyond the... Benefit to the estate. Yeah, the estate would be able to stop incurring attorney's fees and costs. Stop, stop incurring them. I mean, why do you still have to be, it is the fight between the two creditors. Why does the estate really need to be involved at all? Yes, you see, roll over. Well, the state is still a party to the state court litigation. Parties don't show all the time. I mean, don't, don't, don't fight it. I mean, don't, there's nothing good that's going to come out of that. I mean, you've made your peace. Let that play out. Why, why, why can't that play out? I mean, I understand you say that the estate has to incur fees. They don't. Parties decide not to litigate all the time. Trustees decide not to litigate all the time. Okay. There's a claim against the estate. Right, for, and I don't hear, I don't hear any dispute really as to the guarantee fee or the attorney's fees even. It's the indemnification. That, that's the key to this. This is the whole crux of, of the appeal. So the indemnification goes and it's going to work itself on appeal now. But the point is that, that they're saying is they need to pay it. It doesn't become, you know, my term, COE until it's paid. That's the offensive part. Okay. So the problem is the bankruptcy trustee enter into a comprehensive agreement. Okay. The hard parties want to take out one component of that entire comprehensive agreement. So it's a little difficult for me to answer all, the court's question and concern. It's because we are focused on the entirety. And in that regard, it does sound like SPARC. It does sound like Open Medicine. Okay. Which is, you don't look at this too hard in A and C because this part is, is a little vague, but these parts are very solid. So it's catching, it's pulling up the vague part. And that's the trouble I'm having with it. Okay. And, and the trouble I'm having is that the court is considering the 502E argument. So that's completely new. It was not raised. It was not raised in the bankruptcy court. Yes. It was definitely not raised in the bankruptcy court. And it's... But isn't that a question of law? I mean, is that really an application of law here? The question, but no, Your Honor, it's not. Because the context was a 9019 motion. It was not an objection to claim. So I don't know how 502E can be a question of law in a 9019 motion. Okay. If the question was rule 9019, then I can see how that can be a question of law. This is not a pure question of law. And there will be substantial prejudice to the estate. What's the ongoing cost of administering the estate if it stays open? Is it de minimis? Is it significant? It's significant. And, in fact, Your Honor, the estate is currently administratively insolvent. Okay. And we cannot afford any more delays. I thought counsel indicated there would be a distribution to the unsecured. Yes. Okay. I need to clarify. There is no guarantee that there will be a distribution. What we said at one of the hearings for FIAP is that the professionals, these are Chapter 7 administrative claimants, will carve out from their allowed claims to pay unsecured creditors. So there will only be a payout to unsecured creditors if the administrative claimants waive their full claim? Yes. Correct, Your Honor. Is that in the record? Not in the record because we didn't know that there was going to be a 502E argument. Just like we didn't know to put in the record that DBD waived the balance of its deficiency claim and plenty of other things that we did not put in the record or advance any legal theories. So I'm watching the time here. I know. But let's just play that out, okay, just to be very clear. Let's say that Haar properly raised the 502E argument. The counter-argument is that the trustee can settle claims. Trustees do that all the time. This is how we fix claims so that ultimately we have a body of allowed claims so that we can proceed to close cases, even if they had raised it. Thank you. He's standing up, so I'm thinking he wants his time. I do want to say one thing in closing, if I may, just to be clear. As I read the reply, there are all these inappropriate procedures that are being played out, and I want to make sure that the court sees and be reminded. I want to say that justice and rules of law cannot be based on the presumption that if I don't win, everybody else did something wrong. Haar's pleadings in this appeal are replete with inappropriate standards and law and accusations that everybody did something wrong, including the bankruptcy court. The record does not support that, Your Honors, and the bankruptcy court did not abuse its discretion. Let's not forget that is the standard here. That's the end of the story. This panel must affirm. All right. Thank you, Your Honor, and thank you for that. Ms. Schmider, we're going to give you a little bit of extra time because we weren't running time. I said to stop for the transition. We weren't running time during that closing. So I'm going to give you your full three minutes. Yes. So I think that's probably real fair. Sorry for the confusion, Your Honor. No, no confusion. It's always when we have a tradeoff. You know, there's the baton pass, and we don't really have a clean way to do that. So we will now start time. Good morning, Your Honors. Christopher K.S. Wong of Aaron Foster on behalf of Ms. Gloria Kaufman. I only have about five minutes, so I want to answer the questions that you have. But there's been a lot of talk about this as a claim objection. The claim allowance portion of it is a huge component of it. That's just to break a raise. That is indisputed. But this is a 1919 hearing. This is about a 1919 motion, an approval of a 1919 motion. I want to reiterate the standard that the Bankruptcy Court . . . But it goes to likelihood of success on the merits, right? If you have an indemnity claim that springs upon payment and there's no payment . . . Right. That's the merits. It goes to the likelihood of success in the merits, and it also goes to the complexity of litigation involved. What I believe the appellants have improperly addressed in its pleadings, and it doesn't seem to appreciate, is that the state court action is highly complex. It involves multiple parties, three years of litigation. And it all arose from agreements that were signed in 2015 between the appellees, the appellants, DBD, which is the first lien holder, and the bankruptcy estate. In those agreements, there was a guarantee agreement, whereby my client agreed to guarantee the first loan. There is a indemnity agreement, which gives us the right to pursue the estate for an indemnification claim. In that same indemnification agreement, there's a subordination agreement, whereby the appellants agree to subordinate its lien to third position in favor of my client, fully understanding that it includes our indemnification rights, our guarantee fees, and our attorney's fees. And that's all encompassed in this settlement. That's the reason why. To me, and maybe I've been accused of this before, maybe this is overly simplistic, but to me, I'm prepared to assume that Ms. Kaufman could pay this. And so isn't the thing you're really settling, the trustee having to make the decision about if she loses, is she really going to not have to pay it, ultimately? I mean, you're talking temporally about, because she could say, okay, fine, here, I'll impound the money, right? She could say if she wanted to preserve her claim. I mean, we're not talking about someone with no assets, correct? And that goes to the second factor. It's the difficulties of collection, right? But the legal merits of the state court action has to be adjudicated. And Judge Rizzolo found that clearly in his remand orders that the state court is the proper court to determine those issues. And appellants are correct that the statement of decisions was handed down in September this year. And as we currently stand, we don't know. We're considering whether or not to appeal. But regardless, in the context of this 1919, if we appeal, the estate would be dragged into years of litigation. As you said, maybe five years, maybe three years, who knows. It would have to retain appellate counsel, and the estate is already close to being administratively insolvent. If we don't appeal, we have the contingency issue that appellants keep bringing up is no longer applicable. We have a full allowed claim against the estate. The 502E1B issue that appellants keep raising that is never raised in the trial court is now gone. So this settlement is really about cutting off the risk that the state court litigation may end up badly for Mrs. Kaufman. And in turn, we have our indemnification rights against the bankruptcy estate. Now, I want to address the fact that the 502E1B issue was never raised. I guess I don't have as much experience as a lot of the attorneys that are before you today, but it's always been impressed upon me as a law clerk, as a lawyer, that the practice of bankruptcy law has to be precise. If you want something, you've got to say it. You have to raise it, you have to be definite, and it has to be expressed. That's not what the appellants did here. None of the trial court papers raised the 502E1B issue. It was not in this transcript. The judge was not given the opportunity to make findings as to that issue, but it was fully briefed in the claim objection. It was responded to by myself in a 16-page pleading talking about each of the elements of 502E1B. So the court has fully considered that issue, and it decided that there's legal risk, there's factual risk within that issue, but this settlement where it cuts my client's claim in more than half, the indemnity portion, and it gets rid of the attorney, it stops the deleting of attorney's fees from April 2021 and here on and the guarantee fees, that's a great result for the estate. You might ask, you know, why not back out of the settlement if it's so great for the estate? We believe in finality. We want this bankruptcy case to be over. We want to pursue our rights against DBD. We have certainty as to our claims against the estate, and that's it. So for those reasons, we ask that the panel uphold the bankruptcy court's decision to approve the settlement. All right. Thank you very much. All right. Mr. Shimano, on response, rebuttal, you have three minutes. Thank you, Your Honor. Look, the fundamental error here is the Lahajani error here. There should be no dispute at this point. We talk about the estate. What's the prejudice of the estate? What's the benefit of the estate? We're talking about there's no effect on the estate in any way. The trustee can simply, we have no problem, stop litigating, stop spending any money. We're not asking you to spend a dime doing anything with respect to these claims, either the affirmative claims in the state court or in the bankruptcy court. Just get out of the way and allow us to defend our rights. And what Lahajani says. I'm confused here. The litigation that you want to go into isn't the litigation. Never mind. I understand. I just want to object to a claim. I just want to take the position. I just want to object to the claim in the bankruptcy court. So I'm going back to my earlier question about how much money. If your recovery is dependent on a carve-out from counsel that hasn't been agreed to, how do you know it's hundreds of thousands? How do you know you're not all spending way more money now than you're ever going to collect? Yes, that's my client's risk. There's no doubt about it. That's the risk my client is willing to assume. But doesn't that play into A and C? And Judge Taylor asked, what's the harm? Look, Chapter 7 holding $1.5 million, bank fees. Bank fees are going to eat some of this up. And if it goes for five years, it's going to be an amount. If it's coming out of the Chapter 7 professionals, that's significant. Why doesn't that, I mean, as a practical matter, why isn't that just part and parcel of the reason for the settlement? That would justify any settlement. They could give them a $50 million claim. It's a sliding scale though, right? I mean, there's nothing to be gained here for the estate. That's what they're telling us. We've got a shrinking pot. We've got to hold it to let two other people fight. We're trying to estimate it so that we can maximize the return. We're going to conflate this with a different issue, which is called the KVN issue. The trustee was permitted to administer this estate and sell this property on the assumption there would be a carve-out. And what the BAP has said, when you do that, is there's got to be a meaningful distribution and secure creditors to justify that. So there's a pressure on this trustee. When they do a final fee application and seek fees, it's an issue. But let me just say, sitting on the BAP, that I think as a trial judge and as a BAP judge, where the trustee makes that good faith offer and then somebody hijacks the case for years thereafter, and hijacks is a bad word, someone continues the case over the trustee's objection, I don't know that the professionals have the same obligation they had when they made the offer. So I wouldn't count too strongly on there not being a good argument that it's getting much smaller. We acknowledge that, Your Honor, but we're not asking the estate, the trustees, professionals to spend a dime doing anything. All we're asking to do is what the error here, I want to emphasize the error, when we say the Laha Johnny error, is when we raise this with the bankruptcy court and said, look, we are the ones, we are the creditor body. We are the creditor body. We're evaluating the settlement. We don't think it's a good settlement. We understand if we take a risk, we may be in a worse position. We understand that. And you didn't agree to indemnify all the, again, at the time of the case, there's not a whole lot of other people, but you didn't agree and we'll make it right with everybody else. That's true, but again, there was no, the bankruptcy judge, this is the error, he had a duty under A and C to take this into consideration and see was there something we can do. Were there conditions we can put on this settlement? Could he say to our entities, okay, you want to do this? Here's my condition of doing it. That's what Laha Johnny requires the bankruptcy judge to do. We're not here to say he had to do what we wanted. That's not true. He can, he has, he ultimately would have the discretion based upon a factual record to. And you get it. You need to wrap it up. We're now at minute five, so. Okay, but Laha, he had to consider it and he did not do it. He was dismissive. And so what we want. Well, dismissive isn't not considering it. Dismissive is not buying it. No, he was dismissive in that he said, all you're doing here is disagreeing with the trustee's judgment and I don't think that's legitimate opposition to a 90-19 motion. He paid no attention to the fact that we were the creditor body. We're the ones who are going to be affected by this. Okay? And so what we're asked, what we want you to do is remand, remand to the bankruptcy judge and say, look, you have to take this into consideration. You have to look. This is a legitimate fact. The 502E question, they have the affirmative duty to raise it, bring it to the attention of the court, and they did not do it. That was error, and the court did not identify it as an issue. That's error. So please remand and let the bankruptcy judge address the factors that he was supposed to address. Thank you very much. Good argument on all three sides, and we will take this under submission. And again, I'm so pleased to have a well-argued case with everyone in the courtroom. Great. All right. And no offense to any of the people appearing by video, but it really is a nice thing.
judges: Taylor, Spraker, Gan